UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO:05-30020-MAP

Anabela Carvalho, Anthony Gittles,
Lawrence Pietrucci, Richard LaFleche,
and
Robert Vieu,
                Plaintiffs

v.

Meadwestvaco Corporation and
Union, Paper, Allied-Industrial, Chemical
& Energy Workers International Union,
Local 10001 and its International,
                Defendant

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

I   PRELIMINARY STATEMENT

The defendant, Mead/Westvaco brings its Motion to Dismiss count II of the Complaint alleging that Plaintiffs' claims under M.G.L. c. 151B should be dismissed for lack of jurisdiction and because they are preempted under Federal Labor Law. While Plaintiffs position with respect to both issues is more fully explored below, the Plaintiffs do object to Defendants' characterization of the dispute as merely a complaint that the Plaintiffs were "not allowed to obtain alternative positions in Enfield because they were unable to work the twelve hour shifts required for any employee to be hired to work the continuous operations schedule utilized at Respondent's Enfield facility."

Page 1

While it is true that Plaintiffs were unable to work more than eight hour shifts, it is not true that employees were "required to work" twelve hours shifts at the Enfield facility. (Complaint Paragraph 65, *indicating that the position to which the plaintiffs were denied a transfer had a work schedule of 7 p.m. to 3 p.m..*) Indeed, the Plaintiffs will present evidence that employees with less seniority were awarded eight (8) hours positions which the Plaintiffs were not only qualified to perform but expressed a desire to perform. (See Complaint Paragraphs 65, 67 & 69). Moreover, the thrust of Plaintiffs' complaint is that the defendant utilized the Springfield plant closing as subterfuge designed to rid themselves once and for all of any employee with any medical restriction whatsoever. As noted in the Complaint, any employee with even the slightest work restriction who wished to transfer to the Connecticut facility was required to obtain a doctor's note removing that restriction before they could transfer to the Connecticut facility. There was never any exploration or determination by the defendant Mead/Westvaco, as to whether those employees were able to perform the essential functions of their position with or without a reasonable accommodation. See Complaint, paragraphs 59-73.

Finally, the Plaintiffs object to the defendant's reliance on a single sentence decision by the Massachusetts Commission Against Discrimination stating that none of the conduct occurred in the State of Massachusetts. This conclusion by the Commission was patently incorrect. In fact, all the conduct occurred in Massachusetts which is why the defendant characterizes its objections as an attempt to regulate workplace standards in Connecticut. Moreover, the Commission's decision was provided without an evidentiary hearing and prior to any discovery in the case. The Commission's decision is patently unpersuasive and irrelevant.

## II   THE COURT HAS JURISDICTION OVER THE PLAINTIFF'S STATE DISCRIMINATION CLAIMS.

The Defendant, Mead/ Westvaco, suggests that the Plaintiffs state discrimination claims should be dismissed because the Court lacks the ability to "regulate foreign employers in the operation of their facilities outside the borders of the Commonwealth of Massachusetts."

The Plaintiffs do not seek to "regulate" the conduct of the Defendant's facility in Enfield, Connecticut. Indeed, the Plaintiffs each contend that they were in fact qualified handicapped individuals as the Connecticut Facility operated and under the terms of the transfers. While the Defendant may contest this fact by asserting that the essential functions of the position required that they be able to work 12 hour shifts, a fact which the complaint's adamantly deny, this contested factual assertion is not an adequate basis for dismissal.[1] Moreover, the Plaintiffs do not seek to impose any change in the operations of the Enfield facility nor do they wish that this Court abridge the seniority or other provisions contained in the collective bargaining agreement. Therefore, the State law claim can not be reasonably interpreted as seeking to "regulate" foreign conduct.

---

[1] The Plaintiffs do not address the case law cited by the Defendant as these cases support only the proposition that the Commission lacks the authority to regulate conduct outside the borders of Massachusetts. While the Plaintiffs do not necessarily agree with this proposition, the argument itself is wholly irrelevant because the discriminatory conduct clearly occurred in Massachusetts. The Plaintiffs are not asking the Defendant to change anything about their Enfield facility. They simply contend that they were qualified handicapped individuals who were denied continued employment solely because of their medical restriction. Moreover, the Defendant appears to confuse the question of whether conduct perpetrated by a Massachusetts employer in Massachusetts was discriminatory with whether this Court, may, as a remedy to discriminatory conduct, order the Enfield facility to accommodate the Plaintiff's medical restriction. It is the former, not the later that defines the State Statutes jurisdiction in this case. Nevertheless even if the Court lacks the authority to impose one of many remedies available, this does not destroy the Commission's jurisdiction nor has the Defendant provided any authority to support such a proposition.

Finally, the Plaintiff would note by analogy the absurdity of Defendant's argument. According to the Defendant, a Massachusetts employer may deny its employees a promotion to a position in another State purely because the employee is a minority and not be subject to the penalties of Chapter 151B. This would be true despite the fact that all of the discriminatory conduct occurred in Massachusetts. Presumably the Defendant would contend that M.G.L. c. 151B permits a Massachusetts employer to discriminate against a Massachusetts employee within the borders of Massachusetts so long as it involves a promotion or transfer to a position located in another State. Such a result was never contemplated by the statute and is a perversion of its stated goal to prevent discrimination within the borders of Massachusetts.

## III   THE PLAINTIFF'S CLAIMS ARE NOT PREEMPTED UNDER THE LABOR MANAGEMENT RELATIONS ACT (LMRA).

Section 301 of the LMRA states:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties. . . . 29 U.S.C. §§ 185(a).

Originally, this language was interpreted as preempting only suits in State court alleging violation of a labor contract. Teamsters v. Lucas Flour Co., 369 U.S. 95, 103 (1962). The scope of preemption under §301, however, was later expanded to include and State claims the merits of which turn on rights of the parties conferred by a collective bargaining agreement. Livadas v. Bradshaw, 512 U.S. 107, 114 (1994). See also Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 210 (1985). Thus, the general rule is that §301 preempts a state law claim if the resolution of that claim depends upon the meaning of a collective bargaining agreement. Lingle v. Norge Div. of

Page 4

Magic Chef, 486 U.S. 399, 405-406, 100 L. Ed. 2d 410, 108 S. Ct. 1877 (1988).

However, there are exceptions to this general rule. The Supreme Court has expressed that the scope of preemption under §301 has its limits lest unions and employers be given the power to give every term in a collective bargaining agreement to full force of Federal law.

> Of course, not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by §§ 301 or other provisions of the federal labor law. Section 301 on its face says nothing about the substance of what private parties may agree to in a labor contract. Nor is there any suggestion that Congress, in adopting §§ 301, wished to give the substantive provisions of private agreements the force of federal law, ousting any inconsistent state regulation. Such a rule of law would delegate to unions and unionized employers the power to exempt themselves from whatever state labor standards they disfavored. Clearly, §§ 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law. In extending the pre-emptive effect of §§ 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract 471 U.S. at 211-212.

From this concern, the Supreme Court cautioned that a State law claim which turned merely on the motives and conduct of the parties and did not require interpretation of a CBA will not be preempted. Hawaiian Airlines v. Norris, 512 U.S. 246, 262, 129 L. Ed. 2d 203, 114 S. Ct. 2239 (1994). Likewise, non-negotiable rights conferred on individual employees as a matter of State law are not preempted. Livadas, 512 U.S. at 123.

With respect to the latter standard, claims under the Americans with Disabilities Act and M.G.L. c. 151B have been deemed to be rights which exist independent of the collective bargaining agreement and therefore do not require interpretation of the agreement. Lingle, 486 U.S. at 411-114; see also, Ralph v. Lucent Technologies, Inc., 135 F.3d 166, 171 (1st Cir. 1998); Fant v. New England Power Service Co., 239 F.3d 8, 15 n.7 (1st Cir. 2001); Welch v. General

Motors Corp., 922 F.2d 287, 290 (6th Cir. 1990). As such, the Plaintiffs' claims under ADA and 151B are not pre-empted under any circumstance and we need not address whether the claim requires interpretation of the collective bargaining agreement.

Nevertheless, the question of whether interpretation of the collective bargaining agreement is required boils down to whether the outcome of the State law claim will depend upon the meaning of the collective bargaining agreement.

> A state-law claim can "depend" on the "meaning" of a collective bargaining agreement in two ways. First, a claim so qualifies if it alleges conduct that arguably constitutes a breach of a duty that arises pursuant to a collective bargaining agreement. See, United Steelworkers v. Rawson, 495 U.S. 362, 369, 109 L. Ed. 2d 362, 110 S. Ct. 1904 (1990) ("[A] state-law tort action against an employer may be pre-empted by §§ 301 if the duty to the employee of which the tort is a violation is created by a collective-bargaining agreement and without existence independent of the agreement."). Second, a claim so qualifies if its resolution arguably hinges upon an interpretation of the collective bargaining agreement. See Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220, 85 L. Ed. 2d 206, 105 S. Ct. 1904 (1985) (finding section 301 preemption "when resolution of a state-law claim is substantially dependent upon analysis of the term of an agreement made between the parties in a labor contract"). If a state-law claim depends on the meaning of the collective bargaining agreement in either of these ways -- that is, under Rawson's "duty" rubric or under Allis-Chalmers's "interpretation" rubric -- it is preempted. Flibotte v. Pennsylvania Truck Lines, 131 F.3d 21, 26 (1997).

The so-called "duty rubic" is inapposite because the Plaintiffs do not claim a violation of any right afforded them under the collective bargaining agreement nor do they allege a breach of some duty of the employer as derived under the collective bargaining agreement.[2] The right of the Plaintiffs to be free of discrimination based on their handicap is derived from Chapter 151B and the ADA. This suit is premised on the Defendant's termination of the Plaintiffs based soley

---

[2]Although Defendant asserts that there was a claims violation and that interpretation of the CBA is required, the conspicuously failed to cite the disputed collective bargaining language.

upon the fact that they were under a medical restriction without regard to the nature or extent of that restriction. While it is true that the supplemental agreement reached with the Union provided that no medical restriction would be acceptable and that this may have been a thinly veiled attempt to legitimize the employer's discriminatory actions, ultimately, it is the conduct of the employer and not the terms of the collective bargaining agreement that breached the Plaintiff's rights under State and Federal anti-discrimination laws.

The "interpretation rubic" yields no better result for the Defendant.

> It is important to distinguish "interpretation" from mere "consultation." Consulting an agreement during the course of litigating a state law claim does not make the claim "dependent" for purposes of Section 301 preemption. See Livadas v. Bradshaw, 512 U.S. 107, 124, 129 L. Ed. 2d 93, 114 S. Ct. 2068 (1994), citing Lingle, 486 U.S. 399, 413 n.12, 100 L. Ed. 2d 410, 108 S. Ct. 1877 (1988); see also Adames v. Executive Airlines, Inc., 258 F.3d 7, 11-12 (1st Cir. 2001). There must exist a "real interpretive dispute." Lydon v. Boston Sand and Gravel Co., 175 F.3d 6, 11 (1st Cir. 1999), citing Martin v. Shaw's Supermarkets, Inc., 105 F.3d 40, 42 (1st Cir. 1997) (emphasis in original). "Purely factual questions about an employee's conduct or an employer's conduct and motives do not require a court to interpret any term of a collective bargaining agreement." Flibotte v. Pennsylvania Truck Lines, Inc., 131 F.3d 21, 25-26 (1997), quoting Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 261, 129 L. Ed. 2d 203, 114 S. Ct. 2239 (1994). Biagini v. Berkshire Concrete Corp., 190 F. Supp. 2d 170, 174 (2002).

As noted above, there is no real interpretive dispute in this case. Indeed, all parties agree that the employer and the Union included in a memorandum of agreement a provision that anyone with a medical restriction was prohibited from transferring to the Enfield facility. The Defendant does not challenge this fact and thus there is no real "interpretive dispute." At most, we need only "consult" with the collective bargaining agreement to discover evidence of the employer's discriminatory acts and motives. Nevertheless, it bears repeating that Plaintiff's claims are not premised upon the existence of this obviously discriminatory language but rather

upon the employer's conduct in consummating their discriminatory intent.

Finally, the Defendant's assertion that the present claims are subject to the so-called "Machinist pre-emption" is equally misplaced. The cases relied upon by Defendant pertained to state regulation of conduct which was intentionally left unregulated by the Federal Government such as the right to picket peacefully. Lodge 76, Int'l Assoc. of Machinist & Aerospace Workers v. Wisconsin Emp. Comm, 427 U.S. 132, 140, 49 L.Ed 2d 396 (1976). Those cases deal with the need to leave reasonable economic weapons of both employers and Unions to the free wielding winds of the marketplace. That is a far different subject than discrimination in the workplace. Indeed, it is safe to assume that the U.S. Congress, in passing Americans with Disabilities Act, did not regard discrimination in the workplace as an area of labor relations that was intentionally left unregulated. Furthermore, there is simply no case law that would support Defendant's apparent proposition that the LMRA preempts Federal anti-discrimination statutes.

## CONCLUSION

For the forgoing reasons, the Plaintiff's claims are clearly not preempted under Federal Labor Laws and the Commission has jurisdiction over the Employer's conduct.

Respectfully submitted,

The Plaintiffs
By their attorney,

_____
John Connor, Esq.
Moriarty and Connor, LLC
101 State Street, Suite 501
Springfield, MA 01103
(413) 827-0777

May 11, 2005

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail/hand on 5/11/05

Page 8