UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-30020- MAP

Anabela Carvalho, Anthony Gittles,
Lawrence Pietrucci, Richard LaFleche,
and
Robert Vieu,
         **Plaintiffs**

v.

Meadwestvaco Corporation and
Union, Paper, Allied-Industrial, Chemical
& Energy Workers International Union,
Local 10001 and its International,
         **Defendant**

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

### INTRODUCTION

1. By this action the Plaintiff's Anabela Carvalho, Anthony Gittles, Lawrence Pietrucci, Richard La Fleche and Robert Vieu seek equitable relief and damages against Meadwestvaco Corporation and Union, Paper, Allied-Industrial, Chemical & Energy Workers International Union Local 10001 and its International.

    Plaintiffs bring this action pursuant to the Americans With Disabilities Act, 42 U.S.C. §12101 et. seq. and the Massachusetts Anti-Discrimination Laws, Mass. Gen. Laws ch. 151B et. seq.

### JURISDICTION AND VENUE

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 2000e-5, as this action arises under the Americans with Disabilities Act, 42 U.S.C. §12101 et. seq.

3. Venue is proper in this district pursuant to 28 U.S.C. §§ 2000e-5.

4. At all times pertinent hereto, the Defendants had offices in the State of Massachusetts, County of Hampden, City of Springfield, within the Western Massachusetts District of the U. S. District Court.

5. Venue is proper in this court because the unlawful practice was committed in Springfield,

Massachusetts.

## PARTIES

6. Plaintiff Anabela Carvalho is a person who resides at 1039 Worcester Street, Springfield Massachusetts, 01101.

7. Plaintiff Anthony Gittles is a person who resides at 142 Chapin Terrace, in Springfield Massachusetts, 01107.

8. Plaintiff Lawrence Pietrucci is a person who resides at 27 Arcadia Blvd, Springfield Massachusetts, 01108.

9. Plaintiff Richard LaFleche is a person who resides at 106 Osborne Terrace, Springfield Massachusetts, 01104.

10. Plaintiff Robert Vieu is a person who resides at 164 Garvey Drive in Springfield Massachusetts, 01109.

11. Defendant MeadWestvaco Corporation (formerly Westvaco Corporation and hereinafter referred to as "employer") is a corporation conducting business in Massachusetts.

12. The name and address of the resident agent of Meadwestvaco Corporation is CT Corporation System, 101 Federal Street, Boston, MA, 02110.

13. Defendant Union, Paper, Allied-Industrial, Chemical & Energy Workers International Union, Local 10001 is a labor organization located at 33 Eastland Street in Springfield, MA 01109. The International Union is located in Nashville Tennessee. The Local Union and the International Union are hereinafter referred to as "PACE"

## STATEMENT OF FACTS

14. MeadWestvaco owns and operates a manufacturing facility at 2001 Roosevelt Avenue, Springfield, Massachusetts, 01104.

15. MeadWestvaco owns and operates a manufacturing facility at 180 Moody Road, Enfield, Connecticut 06082.

16. PACE represents blue collar employees in the employer's Springfield and Enfield plants.

17. In October 2001, it was announced that Westvaco Corporation would merge with Mead Corporation in a $10 billion deal to form a new company, MeadWestvaco Corporation.

18. Annual revenues from MeadWestvaco corporation were estimated at more than $8 billion in packaging, coated and specialty papers, consumer and office products, and specialty chemicals.

19. At all material times described herein MeadWestvaco Corporation employed in excess of 500 employees.

20. In September of 2002, the defendant announced its intention to close its Springfield plant and to consolidate its operations with the employer's plant in Enfield, Connecticut.

21. The employer announced that employees could elect to transfer to the Enfield plant according to seniority.

22. Subsequent to announcing the closing of the Springfield facility, PACE and the employer "negotiated" an amendment to the existing collective bargaining agreement (hereinafter memorandum of agreement) which enhanced plant closing benefits that were already contained in the existing collective bargaining agreement.

23. The memorandum of agreement also stated that an individual desiring to transfer to the Enfield plant must have "no medical restriction." A true and accurate copy of the memorandum of agreement entitled "Company Offer" and dated October 10, 2002, is attached hereto as Exhibit "A" and incorporated herein.

24. Plaintiff Anabela Carvalho was employed by the Defendant, Mead/Westvaco as a Machine Adjuster from December of 1986 through November 24, 2002.

25. Anabela Carvalho developed Carpal Tunnel Syndrome as a result of her work as a Machine Adjuster while working for the Defendant, Mead/Westvaco.

26. The Defendant Mead/Westvaco accepted Anabela Carvalho's claim for worker's compensation and paid her workers compensation benefits pursuant to Mass. Gen. Laws ch. 152.

27. The plaintiff Anabela Carvalho's condition caused her to suffer many side effects which substantially limited her life activities.

28. Due to her work related injury Anabela Carvalho has been unable to work in excess of 8 hours per day although she was able to work overtime on weekends.

29. Anabela Carvalho informed her employer of her work restrictions and her employer accommodated those restrictions for several years.

30. Plaintiff Anthony Gittles was employed by the Defendant Mead/Westvaco from May of 1971 through November 24, 2002 at its Springfield, Massachusetts plant.

31. Anthony Gittles last job classification with the defendant Mead/Westvaco was a Machine Adjuster Class A.

32. In May of 1996, Anthony Gittles presented the employer with a request for a permanent work limitation restricting him to no more than 8 hours of work in a particular day, but allowing him to work overtime on weekends.

33. This Restriction sought by Anthony Gittles in May of 1996 was the result of a back condition (sciatica and torn cartilage), arthritis in his knee, and sleep Apnea.

34. In May of 1996, Anthony Gittles asked his employer to accommodate this request and it was denied. See Exhibit "B" Memo to Anthony Gittles from Plant Superintendent dated September 10, 1996.

35. On October 30, 1996, Anthony Gittles filed a complaint with the Massachusetts Commission Against Discrimination claiming that his employer had failed to provide him with a reasonable accommodation and otherwise discriminated against him on the basis of his handicap. A copy of that complaint is attached as Exhibit "C"

36. On or about December 30, 1998, the Massachusetts Commission Against Discrimination found probable cause to believe the employer had discriminated against Anthony Gittles on the basis of his handicap. A copy of the Commission's determination is attached as Exhibit "D."

37. In approximately April of 2001, the employer approached Anthony Gittles and asked to discuss settlement of his pending MCAD complaint.

38. As a result of that settlement discussion, the employer agreed to permanently accommodate Anthony Gittles medical restriction limiting his work days to (8) eight hours per day. The employer specifically stated in this agreement:

> These restrictions have been acceptable for the past few years and will continue barring any changes in your medical conditions.

A copy of that settlement agreement is attached as Exhibit "E."

39. Plaintiff Lawrence Pietrucci was employed by the Defendant Mead/Westvaco as a Machine Adjuster from October of 1968 through November 24, 2002.

40. In 1990, Lawrence Pietrucci injured his back while working for the defendant.

41. In 1990 Lawrence Pietrucci was paid workers compensation benefits and eventually returned to full duty.

42. In Approximately April of 2002, Lawrence Petrucci injured his hip while at work.

43. In April 2002, the employer again accepted Lawrence Petrucci's claim for worker's compensation and paid workers compensation benefits accordingly.

44. The April 2002 work related injury caused Lawrence Pietrucci to suffer many side effects which limited his life activities.

45. As a result of the April 2002 work-related injury, Lawrence Pietrucci's treating physician issued temporary work restrictions which required no lifting in excess or 20 lbs and no overtime work.

46. Lawrence Pietrucci's April 2002 restrictions were temporary and the employer accommodated them.

47. On November 4, 2002, Lawrence Pietrucci presented to the employer a medical release indicating that his medical restrictions were lifted and he was ready to return to full duty.

48. Plaintiff Richard La Fleche was employed by the Respondent, Mead/Westvaco as a Machine Adjuster from May of 1966 through November 24, 2002.

49. In July of 1988, Plaintiff Richard La Fleche injured his back while working for the Respondent, Mead/Westvaco as a Machine Adjuster.

50. The employer accepted Plaintiff Richard La Fleche's claim for worker's compensation and paid him workers compensation benefits as a result of the July 1988 back injury.

51. The work related back injury caused Plaintiff Richard La Fleche to suffer many side effects which limited his life activities.

52. For the past several years, Plaintiff Richard La Fleche has been unable to work in excess of 8 hours per day although he has been able to work overtime on weekends.

53. Plaintiff Richard La Fleche informed his employer of his work restrictions and the employer accommodated those restrictions for several years. See Exhibit "F."

54. Plaintiff Robert Vieu was employed by the Respondent, Mead/Westvaco as a Machine Adjuster from December 18, 1994 through November 24, 2002.

55. Prior to commencing work with the employer, Plaintiff Robert Vieu suffered a heart attack and was left with continuing heart problems including coronary artery disease. This condition caused him to suffer many side effects which limited his life activities.

56. In approximately May of 2000, Robert Vieu's treating physician indicated that because of his health condition, he was unable to work beyond 8 hours a day and no more than 40 hours per week.

57. Robert Vieu informed his employer of his work restrictions and his employer accommodated his work restrictions.

58. In December of 2000, Robert Vieu's medical restriction was altered and limited him to working 8 hours per day although he was able to work overtime on the weekends. Again, his employer accommodated this medical restriction. See Exhibit "G"

59. On or about October 18, 2002, PACE ratified the memorandum of agreement with the employer prohibiting any employee with a medical restriction from transferring to the Enfield, Connecticut plant.

60. The Plaintiffs objected to the ratification of the memorandum of agreement.

61. Subsequent to the union's ratification of the memorandum of agreement the employees of the Springfield plant met with the employers representative regarding the transfer to the Enfield plant (hereinafter the meeting). A representative from PACE attended the meeting.

62. During the meeting the Plaintiffs requested a transfer to the Enfield Plant.

63. The Plaintiffs were told that they could not transfer to the Enfield Plant because of their medical restrictions.

64. At the meeting plaintiff Anabela Carvalho received a form which stated, "Employee refused to sign. Employee was told she would not be offered a position in Enfield due to the memorandum of agreement and her medical restrictions. Waives the 24 hr period to get Drs. Note." A copy of the form is attached hereto as Exhibit "H" and incorporated herein.

65. The form Anabela Carvalho received at the meeting also acknowledged that Anabela Carvalho did in fact elect to "transfer" to the Enfield plant with a work the schedule of 7am-3pm.

66. At the meeting plaintiff Anthony Gittles received a form which stated, "Based on the memorandum of agreement the employee will not be considered for the Enfield plant due to the medical restrictions. Offered 24 hrs to see dr. Employee refused to sign." A copy of the form is attached hereto as Exhibit "I" and incorporated herein.

67. The form Anthony Gittles received at the meeting also acknowledged that he did in fact elect to "transfer" to the Enfield plant with a work schedule of 7am-3pm.

68. At the meeting Richard Lafleche received a form which stated, "Employee not going to Dr. Emp. Can't work 12 hrs. says he can't do it. Due to memorandum of agreement medical not offered. Employee refused to sign." A copy of the form is attached hereto as Exhibit "J" and incorporated herein.

69. The form Richard Lafleche received at the meeting also acknowledged that he did in fact

elect to "transfer" to the Enfield plant with a work schedule of 7am-3pm.

70. Many employees subsequently transferred to the Enfield plant where they worked 8 hour shifts although they have less seniority than the plaintiffs and have no medical restrictions.

71. At no time did the employer inquire or otherwise investigate whether the Plaintiffs could perform the essential functions of their jobs.

72. Mead/Westvaco failed to provide the Plaintiffs with a reasonable accommodation.

73. As a direct and proximate result of the employer's refusal to accommodate any medical restriction, the Plaintiffs employment was terminated effective November 24, 2002.

74. At all material times described herein, Plaintiffs were in fact capable of performing the essential functions of their positions.

75. On February 14, 2003 Plaintiffs filed a complaint with the Massachusetts Commission Against Discrimination and the EEOC.

76. On December 29, 2004 the Plaintiffs requested a right to sue letter from the Equal Employment Opportunity Commission.

77. On January 10, 2005 the Plaintiffs received a Notice of Right to Sue for each of the named plaintiffs pursuant to 42 U.S.C. 2000e-5(f) copies of which are attached hereto as Exhibit K.

78. Plaintiffs have exhausted their administrative remedies.

79. As a direct and proximate result of the defendants actions, plaintiffs have suffered loss of future income.

80. As a direct and proximate result of the Defendants actions, Plaintiffs have suffered emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

## FIRST CLAIM

81. Plaintiffs incorporate herein by reference all the allegations made previously in this discrimination complaint as if fully stated herein, specifically all the allegations made in paragraphs numbered #1 to #80.

82. By refusing to allow otherwise qualified individuals to transfer to the Enfield plant, Mead/Westvaco defendant, by their conduct herein alleged, intentionally, willfully and without justification, violated the Americans with Disabilities Act (1990).

## SECOND CLAIM

83. Plaintiffs incorporate herein by reference all the allegations made previously in this discrimination complaint as if fully stated herein, specifically all the allegations made in paragraphs numbered #1 to #82

84. By refusing to allow otherwise qualified individuals to transfer to the Enfield plant, Mead/Westvaco defendant, by their conduct herein alleged, intentionally, willfully and without justification, violated Mass. Gen. Laws ch. 151B § 4 (16).

## THIRD CLAIM

85. Plaintiffs incorporate herein by reference all the allegations made previously in this discrimination complaint as if fully stated herein, specifically all the allegations made in paragraphs numbered #1 to #84.

86. The Local Union and the International are parties to the collective bargaining agreement and are joined in this action for the sole purpose of ensuring complete equitable relief in accordance with the Americans with Disabilities Act and Mass. Gen. Laws ch. 151B § 4(5).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Anabela Carvalho, Anthony Gittles, Lawrence Pietrucci, Richard LaFleche, and Robert Vieu respectfully demand the following relief:

1. Trial by jury of all issues so triable;

2. A judgement against the defendants Paper, Allied-Industrial, Chemical & Energy Workers International Union Local 10001 and its International ordering said defendants to cooperate and fully assist in implementing any remedy as well as any judgement ordered by the Court against the defendant Mead/Westvaco Corporation. The Plaintiffs seek no other form of relief, including but not limited to attorney's fees and costs, against the defendants Paper, Allied-Industrial, Chemical & Energy Workers International Union Local 10001 and its International.

3. A judgment against the defendant Mead/Westvaco Corporation awarding Plaintiffs all costs and disbursements for this action;

4. A judgement against Mead/Westvaco Corporation awarding Plaintiffs any and all appropriate relief.

5. A judgment against Mead/Westvaco Corporation awarding Plaintiffs attorney fees and the costs and disbursements of this action pursuant to 42 U.S.C. § 12117 and 42 U.S.C. § 2000e-5(k) and Mass. Gen. Laws ch.151B.

6. A judgment against Mead/Westvaco Corporation awarding money damages in a yet to be specified amount for Defendants violations of Mass. Gen. Laws ch.151B and 42 U.S.C. §§12112;

7. A judgement against Mead/Westvaco Corporation awarding compensatory and punitive damages pursuant to 42 U.S.C. 1981a and Mass. Gen. Laws ch.151B.

8. A judgment against Mead/Westvaco Corporation awarding such other and further relief as is available under the laws of the United States and the Commonwealth of Massachusetts which the Court may deem just and proper.

> The Plaintiffs,
> By Their Attorney,
>
> John D. Connor, Esq.
> BBO# 629-185
> The Law Offices of Moriarty and Connor, LLC
> 101 State Street, Suite 501
> Springfield, MA 01103
> Tel (413) 827-0777
> Fax (413) 827-8867

July 25, 2005

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail/hand on 2/25/05